IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| PEGGY BATTLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:16-cv-689-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Peggy Battles, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Ms. Battles timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Battles was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education. She has past work as a restaurant assistant manager, combination working manager/stocker,

cashier, produce manager, and retail stocker. (Tr. at 126.) Ms. Battles claims that she became disabled on December 21, 2012, the date of her fourth knee surgery. (Tr. at 112.) She claims to suffer from numerous physical and mental problems including major depressive disorder, panic disorder, posttraumatic stress disorder, severe back pain due to degenerative disc disease, severe neck pain due to cervical degenerative disc disease, joint pain due to osteoarthritis, chronic hypertension, severe bilateral wrist pain due to carpal tunnel syndrome s/p arthroscopic surgery in 2011, severe bilateral foot pain, severe headaches, obesity, and insomnia.

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's

residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Ms. Battles meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. at 114.) He next determined that Ms. Battles has not engaged in SGA since the alleged onset of her disability, December 21, 2012. (*Id.*) According to the ALJ, Plaintiff's osteoarthritis, bilateral carpal tunnel syndrome, s/p bilateral releases, bilateral degenerative joint disease of the knees, s/p right

knee bicompartmental arthroplasty, obesity, depression, anxiety, and posttraumatic stress disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 119.) The ALJ determined that Plaintiff has the RFC to perform sedentary work that requires no operation of foot controls, bilaterally; no climbing ladders, ropes, or scaffolds; no exposure to excessive vibration, unprotected heights, uneven terrain, or hazardous, moving machinery; no more than occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; no more than frequent handling and fingering, bilaterally; can understand, remember, and carry out simple instructions for periods of two hours at a time over an eight-hour day with normal mid-morning, lunch, and mid-afternoon breaks; and can tolerate occasional decision-making, occasional changes to her work environment, and occasional interaction with the public, co-workers, and supervisors. (Tr. at 121.)

According to the ALJ, Ms. Battles cannot perform any of her past relevant work. (Tr. at 126.) The ALJ further noted that Plaintiff is a "younger individual aged 45-49," she has a "limited education," and she is able to communicate in English, as those terms are defined in the regulations. (*Id.*) With the assistance of a

vocational expert ("VE"), the ALJ found Plaintiff could perform a significant number of jobs in the national economy including document scanner, table worker, and addressing clerk. (Tr. at 127.) Accordingly, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act from December 21, 2012 through the date of his decision. (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision

makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Ms. Battles alleges that the ALJ's decision should be reversed and remanded for four reasons.[1] First, she believes that the ALJ erred in finding her subjective complaints of pain not credible because Social Security Ruling ("SSR") 16-3p,

---

[1] The Court has grouped several of Plaintiff's claims together.

which became effective on March 28, 2016, applies retroactively to her case and eliminates consideration of a claimant's credibility from an ALJ's analysis. Second, Plaintiff challenges the weight given by the ALJ to some of the medical sources in her case. Specifically, she contends that the ALJ erred in giving little weight to the opinion of her treating physician, Dr. Keithan, and to the opinions of one-time consultative examiners Dr. Ripka and Dr. Wilson. Third, Plaintiff asserts that the ALJ should have found that her impairments meet or medically equal Listings 1.02, 12.04 and 12.06 at step three of the sequential evaluation process. Fourth, she argues that the Appeals Council refused to review new evidence she submitted solely because it was dated after the ALJ's decision without considering whether the new evidence was actually chronologically relevant and/or material, and that the ALJ's decision was not based on substantial evidence when the evidence to the Appeals Council is considered.

## A. Credibility Determination and SSR 16-3p

Plaintiff contends that the ALJ erred in evaluating her credibility under SSR 16-3p, which became effective on March 28, 2016. Plaintiff argues that this rule modification is retroactive and credibility is no longer an issue.

The Commissioner published SSR 16-3p on March 24, 2016, and explicitly established the effective date for the ruling as March 28, 2016. *See* SSR 16-3p, 2016

WL 1237954, at *1 (March 24, 2016). SSR 16-3p was intended to supersede former

SSR 96-7p, and was enacted for the purpose of providing "guidance about how we

evaluate statements regarding the intensity, persistence, and limiting effects of

symptoms in disability claims under Titles II and XVI of the Social Security Act."

SSR 16-3p, 2016 WL 1119029 (March 16, 2013), at *1. Specifically, SSR 16-3p

> eliminat[ed] the use of the term "credibility" from [the Social
> Security Administration's] sub-regulatory policy, as our regulations do
> not use this term. In doing so, we clarify that subjective symptom
> evaluation is not an examination of an individual's character. Instead,
> we will more closely follow our regulatory language regarding
> symptom evaluation.

> Consistent with our regulations, we instruct our adjudicators to
> consider all of the evidence in an individual's record when they
> evaluate the intensity and persistence of symptoms after they find that
> the individual has a medically determinable impairment(s) that could
> reasonably be expected to produce those symptoms. We evaluate the
> intensity and persistence of an individual's symptoms so we can
> determine how symptoms limit ability to perform work-related
> activities for an adult . . . .

> . . .

> In evaluating an individual's symptoms, our adjudicators will not
> assess an individual's overall character or truthfulness in the manner
> typically used during an adversarial court litigation. The focus of the
> evaluation of an individual's symptoms should not be to determine
> whether he or she is a truthful person. Rather, our adjudicators will
> focus on whether the evidence establishes a medically determinable
> impairment that could reasonably be expected to produce the
> individual's symptoms and given the adjudicator's evaluation of the
> individual's symptoms, whether the intensity and persistence of the
> symptoms limit the individual's ability to perform work-related

activities or, for a child with a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

*Id*. at *1-2, 10 (alterations and ellipses supplied).

Plaintiff asserts that even though SSR 16-3p was not adopted until after her case was decided in September 2014, it should be applied retroactively. However, according to the Supreme Court, "[r]etroactivity is not favored in the law," and administrative rules will not be construed to have retroactive effect unless Congress expressly empowers the agency to promulgate retroactive rules and the language of the rule explicitly requires retroactive application. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988). The retroactivity of SSR 16-3p has not been directly addressed by any circuit court of appeals in a published decision. Nonetheless, the Eleventh Circuit has twice recently declined to apply SSR 16-3p retroactively in unpublished cases. *See Green v. Comm'r*, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017); *Lara v. Comm'r*, 2017 WL 3098126, at *8 n.6 (11th Cir. July 21, 2017).

Plaintiff cites *Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016), a Seventh Circuit case which neither endorsed nor otherwise discussed retroactive application of SSR 16-3p. She also cites *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214 (C.D. Ill. Aug. 10, 2016), a non-binding out-of-circuit district court case which

cited to a Seventh Circuit case to find an exception to the rule in *Bowen*, 488 U.S. at 208, where the new rule clarifies rather than changes existing law. *See Mendenhall*, 2016 WL 4250214, at *3 (citing *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). However, contrary to the reading of *Pope* urged in *Mendenhall*, the *Pope* court did not remand for reconsideration under a new regulation, and it explicitly held that applying a regulation that is a mere clarification of an existing regulation "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Pope*, 998 F.2d at 483. That is, rather than remand the case for reconsideration under the new regulation, the *Pope* court considered the clarification and affirmed the ALJ's decision. *See id.* at 486-87.

Given the Supreme Court's holding in *Bowen* and the absence of any binding precedent directing that SSR 16-3p is to apply retroactively, the Court is not persuaded that SSR 16-3p applies retroactively to the ALJ's September 2014 decision in this case.

Even if SSR 16-3p did apply retroactively, the ALJ did not violate it in this case. As an initial matter, SSR 16-3p does not alter the methodology for evaluating a claimant's symptoms, but rather explains that the Commissioner eliminated the use of the term "credibility" from this consideration, as "subjective symptom

evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Even though the ALJ used the term "credibility," he did not assess Plaintiff's general, or "overall" character for truthfulness. Instead, he determined, in accordance with SSR 16-3p, whether Plaintiff's subjective complaints were supported by the medical evidence and consistent with other information in the record, as explained further below. *See Cole*, 831 F.3d at 412 ("The change in wording [from SSR 96-7p to SSR 16-3p] is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.").

Nor did the ALJ's consideration of Plaintiff's subjective symptoms violate existing regulations, which have not changed. *See* 20 C.F.R. §§ 404.1529, 416.929. When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not

confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); *Wilson*, 284 F.3d at 1225-26. An ALJ is not required to accept a claimant's allegations of pain and/or symptoms. *Wilson*, 284 F.3d at 1225–26. However, the ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). Further, when the reasoning for discrediting is explicit and supported with substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Other than to restate portions of her hearing transcript, Plaintiff does not explain how the ALJ erred in evaluating her credibility. Nonetheless, in this case, the ALJ's decision reveals that he properly assessed Plaintiff's subjective complaints of pain. Plaintiff testified that her carpal tunnel releases and knee replacements were all unsuccessful; that she cannot sit for longer than 30 minutes or stand for longer than 15 to 20 minutes at a time; that she has problems manipulating things with her hands and fingers; she is unable to turn her head to

the left; she does not drive or do much cleaning; her pain is a 7 out of 10; her current pain medications are ineffective; she spends 95% of her waking hours lying in bed; she only sleeps two hours per night; she hallucinates at night; and she unintentionally lost 60 pounds over a period of a few months due to depression. (Tr. at 73-77.) Based on the overall evidence as explained by the ALJ, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. at 121-22).

Substantial evidence supports the ALJ's credibility determination. As noted by the ALJ, Plaintiff's allegations were inconsistent with the evidence of record, including the findings of Dr. Upadhyay and consultative examiner, Dr. Iyers. (Tr. 123). Dr. Upadhyay, Plaintiff's former pain management specialist, whom she saw three times in October and November 2012 and January 2013, identified neck pain into the left shoulder as her chief complaint but characterized her neck as having good range of motion. (Tr. at 478.) At her March 2013 consultative examination with Dr. Iyers, Plaintiff reported a two-year history of neck pain but Dr. Iyers also found that she had full neck and upper extremity range of motion. (Tr. at 518.) The ALJ also discussed how Plaintiff's allegations regarding her hand and finger

limitations were also inconsistent with the evidence of record, including Dr. Sparks's treatment notes. (Tr. at 430-32.) Dr. Sparks performed Plaintiff's carpal tunnel release and released her to return to work in October 2011, noting that Plaintiff said her hands were "doing good." (*Id.*) The ALJ also explained how the medical evidence showed that Plaintiff retained normal grip strength bilaterally and normal range of motion (Tr. at 123, 430-32). Finally, the ALJ contrasted Plaintiff's subjective complaints about her hands and fingers with her admission that she put together jigsaw puzzles. (Tr. at 123).

In sum, the ALJ properly assessed the intensity and persistence of Plaintiff's symptoms. Plaintiff failed to show that the ALJ's evaluation of her alleged symptoms did not comply with the policy clarifications contained in SSR 96-7p or SSR 16-3p.

## B.    Weight Given to Medical Source Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent

the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight

unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); see also *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on

issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

### 1.    Treating Physician

On June 4, 2013, Dr. Keithan, Plaintiff's treating physician, completed a Physician Statement in which he opined that Plaintiff could not sit, stand, or walk at all during an eight-hour day. (Tr. at 526, 580). He also opined that Plaintiff should never lift any weight, not even one pound. (*Id.*) Dr. Keithan opined that these limitations began in August 2012. (*Id.*)

The ALJ gave little weight to Dr. Keithan's opinion because notes from other examiners documented a higher level of function before and after Dr. Keithan completed the physician statement, Dr. Keithan's own treatment notes failed to support the severity of limitations indicated, and Dr. Keithan's records, particularly from the periods under consideration, did not include objective

medical findings or other evidence to support his opinion. (Tr. at 397-406, 489-511).

Substantial evidence supports the ALJ's decision here. Dr. Keithan noted Plaintiff's diagnoses in his records, but diagnoses do not establish limitations. (Tr. at 397-406, 489-511). *See Moore*, 405 F.3d at 1213 n.6; *see also, e.g., Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Dr. Keithan's records do not include objective clinical findings or other acceptable evidence to support his opinion. For example, Dr. Keithan did not perform Plaintiff's knee surgeries. Other medical opinions submitted during the same time period were drastically different from Dr. Keithan's. A physical capacities evaluation form completed at The Orthopedic Center, where Dr. Sparks, who performed her knee surgery, practiced, indicated that Plaintiff could sit a total of eight hours in an eight-hour workday, could stand for one hour at a time and a total of three hours in an eight hour workday, can walk for one hour at a time and a total of two hours in an eight-hour workday, and can lift as much as 50 pounds occasionally and 10 pounds frequently. (Tr. at 525.)

The ALJ provided good reasons, supported by substantial evidence, for giving little weight to Dr. Keithan's opinion.

## 2. One-Time Consultative Examiners

On January 17, 2014, one month before her hearing, Dr. Ripka, an orthopedic surgeon, performed a one-time examination at the request of Plaintiff's counsel and opined that Plaintiff could sit for only one hour, stand for less than 15 minutes, walk for less than 15 minutes, and would need to elevate her legs at waist level for seven hours during a typical eight-hour workday. (Tr. at 623).

The ALJ gave little weight to Dr. Ripka's opinion because his conclusions were inconsistent with his own findings as well as those of other examiners and because he admitted that he had no access to any x-rays or other imaging evidence. (Tr. at 125.)

Substantial evidence supports the ALJ's decision here. Although Dr. Ripka said Plaintiff's functional limitations existed back to December 21, 2012 (tr. at 623), he did not examine Plaintiff until January 2014. Dr. Ripka's findings that Plaintiff was able to stand or walk less than 15 minutes each at one time and that she would be expected to be lying down, sleeping, or sitting with her legs propped at waist level or above due to her medical condition seven hours out of an eight-hour workday was inconsistent with his own medical report. (Tr. at 125). For example,

his consultative medical report did not diagnose Plaintiff with any impairments other than to say she had multiple orthopedic problems. (Tr. at 626-27). Although Dr. Ripka found Plaintiff had a normal gait, he limited her to standing and walking for less than fifteen minutes. (Tr. at 626-27). Additionally, while Dr. Ripka found Plaintiff had essentially lost all motion in her neck, Riverview Medical Center reported a completely normal range of motion in her neck just two months earlier. (Tr. at 600.) Several other of Dr. Ripka's diagnoses are not supported anywhere else in the record. For example, he found that Plaintiff likely had a stroke during her first pregnancy which caused continuing left-side weakness as a result. (Tr. at 640.) However, that pregnancy was over 30 years ago; no other medical source in the record has noted any evidence suggestive of a stroke; and Plaintiff returned to work after that pregnancy as well as three additional pregnancies. Dr. Ripka also posited that Plaintiff had rheumatoid arthritis, but Dr. Chindalore, a rheumatologist whom Plaintiff began seeing in 2010, reported that her rheumatoid factor was normal. (Tr. at 388.)

On July 7, 2014, also just weeks before her hearing, Dr. Wilson, a psychologist, conducted a one-time psychological consultative examination of Plaintiff at the request of her attorney. (Tr. at 632). Dr. Wilson said Plaintiff had poor mental control and attention and had significant problems with short-term

memory and working memory, poor abstract reasoning, difficulty thinking clearly and explaining herself and had many somatic complaints and concerns. (Tr. at 633). He noted that Plaintiff also had depressed affect with clinically significant levels of depression and anxiety. (Tr. at 633). Dr. Wilson diagnosed Plaintiff with major depressive disorder and panic disorder. (Tr.at 633). As for Plaintiff's functional limitations, Dr. Wilson opined that Plaintiff was impaired in her ability to withstand the pressures of day-to-day functioning and would have difficulty maintaining any type of job. (Tr. at 633). Dr. Wilson assessed Plaintiff with a Global Assessment Functioning score of 45, which indicates very low levels of functioning. (Tr. at 634). Dr. Wilson completed a Mental Health Source Statement and opined that Plaintiff was unable to sustain an ordinary routine without special supervision, perform activities within a schedule, maintain regular attendance, and be punctual; maintain attention, concentration, and pace; understand, remember and carry out very short and simple instructions; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. at 635).

The ALJ gave little weight to Dr. Wilson's opinion because other contemporaneous medical opinions in the record did not support findings as significant as those posited by Dr. Wilson. (Tr. at 125.)

Substantial evidence supports the ALJ's decision. The ALJ noted that difficulties Dr. Wilson observed were not representative of Plaintiff's typical presentation because other examining and treating providers did not report similar observations. (Tr. at 124). For example, while Dr. Wilson opined that Plaintiff had "poor mental control and attention" and "significant problems with short-term and working memory," no records prior to his examination reflect similar complaints by Plaintiff and there are no similar observations by other examiners in the record. Although Plaintiff reported depression and anxiety at November 2013 and May 2014 evaluations by a social worker at Quality of Life Health Services, the social worker found that Plaintiff's memory was intact, attention was intact and her behavior was unremarkable. (Tr. at 531.) Dr. Ripka observed no abnormalities in mood or presentation at his examination of Plaintiff less than three weeks before she saw Dr. Wilson. (Tr. at 624-27). The ALJ also noticed Plaintiff's behavior at the hearing conflicted with Dr. Wilson's findings. (Tr. at 124). Although Plaintiff became emotional when discussing some traumatic events in her past and the decline in her physical abilities, the ALJ found she was able to provide detailed responses to questions, exhibited no evidence of memory deficits, and demonstrated excellent communication skills. (Tr. at 124). Plaintiff also reported on her function report that she worked crossword puzzles and jigsaw puzzles

several times a week with no reported difficulties. (Tr. at 315.) She also denied

having any difficulty handling financial matters at her hearing. (Tr. at 69.)

## C. Listings 1.02, 12.04, and 12.06

To establish a presumption of disability based upon a listing at step three of

the sequential evaluation process, a claimant must show "a diagnosis included in

the Listings and must provide medical reports documenting that the conditions met

the specific criteria of the Listings and the duration requirement." *Wilson,* 284

F.3d at 1224 (citations omitted); *see* 20 C.F.R. §§ 404.1525, 404.1526, 416.925,

416.926. Additionally, a claimant's impairments must meet or equal *all* of the

specified medical criteria in a particular listing for the claimant to be disabled at

step three. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). "A claimant cannot

qualify for benefits under the 'equivalence' step by showing that the overall

functional impact of his unlisted impairment or combination of impairments is as

severe as that of a listed impairment." *Id.* at 531.

### 1. Listing 1.02

Listing 1.02, which is called "Major dysfunction of a joint(s) (due to any

cause)," states:

> Characterized by gross anatomical deformity (e.g., subluxation,
> contracture, bony or fibrous ankylosis, instability) and chronic joint
> pain and stiffness with signs of limitation of motion or other abnormal
> motion of the affected joint(s), and findings on appropriate medically

acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; Or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

Plaintiff lists the criteria of Listing 1.02, and she cuts and pastes portions of her medical records into her brief, but she does not argue or explain how her impairments met or equaled the criteria in subsections A or B of Listing 1.02.

In any event, substantial evidence supports the ALJ's determination that Plaintiff did not meet Listing 1.02. With respect to 1.02A, clinical examinations did not reveal evidence that Plaintiff had an inability to walk effectively. The evidence shows instead that Plaintiff required no assistance with walking and demonstrated the ability to sustain such functions as walking at a reasonable pace over sufficient distance. For example, The Orthopedic Center examined Plaintiff multiple times during the period considered by the ALJ and reported no problems with Plaintiff's gait. (Tr. at 579). The physical capacities form completed by The Orthopedic Center, where Dr. Sparks, Plaintiff's surgeon, practiced, stated that Plaintiff could

walk for a total of two hours in an eight-hour day and stand for three hours in an eight-hour day, which suggests that Plaintiff was able to walk effectively. (Tr. at 525). Similarly, Dr. Iyers, the consultative examiner, did not find that Plaintiff was unable to walk effectively. (Tr. at 520-21). Dr. Iyers found Plaintiff had full range of motion of the left knee and ankles but limited extension of the right knee. (Tr. at 521). Plaintiff's straight leg raising was negative. (*Id.*) Plaintiff's muscle power in her lower extremities was also normal. (*Id.*. Dr. Iyers found no significant abnormality of the extremities and no motor or sensory deficits. (Tr. at 520, 521). Dr. Ripka also reported that Plaintiff walked with a normal gait. (Tr. at 627). The only gait difficulty he observed was due to Plaintiff's vertigo rather than musculoskeletal or joint problems. (Tr. at 626). Other medical records indicate that Plaintiff walked with a limp, but did not indicate that Plaintiff was unable to walk effectively. (Tr. at 638). The evidence does not indicate that Plaintiff's impairments meet the requirements of Listing 1.02A.

Nor do Plaintiff's impairments related to her hand and finger limitations meet the requirements of Listing 1.02B. Plaintiff's medical records do not indicate that she was unable to perform fine and gross movements. Dr. Iyers found Plaintiff's grip strength and opposition functions were normal. (Tr. at 521). Plaintiff also had full range of motion of the wrists. (*Id.*) Plaintiff did not have any

limitation of functions with handling. (Tr. at 522). Although Dr. Ripka found Plaintiff had loss of muscle strength in the left hand and had limited power of grasp, he did not indicate that Plaintiff was unable to perform fine and gross hand movements effectively. (Tr. at 627). In fact, he reported that Plaintiff's activities of daily living were normal and she was able to cook simple meals. (*Id.*) Dr. Upadhyay's notes reflect no abnormal hand or wrist findings, and there is no evidence that Plaintiff had any difficulty maintaining her grip on the walker she used after her knee replacement surgery. (Tr. at 637-706). Plaintiff's failure to provide evidence of inability to walk effectively or perform fine and gross manipulations is sufficient to establish that her impairments did not meet or equal Listing 1.02.

### 2. Listings 12.04 and 12.06

Listing 12.04 addresses affective disorders, as follows:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all

activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration; OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

Listing 12.06 addresses anxiety-related disorders, as follows:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and

sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration. OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

Again, Plaintiff merely cuts and pastes portions of her medical records, this time dealing with her mental impairments, but fails to articulate which part of Listings 12.04 or 12.06 she claims to meet.

Nonetheless, the record, as discussed by the ALJ, provides substantial evidence to support the ALJ's evaluation of these Listings. With regard to subsection "A" of either Listing, although Plaintiff was diagnosed with anxiety and

an affective disorder (depression), a diagnosis alone is insufficient to satisfy the criteria of a listing impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d). With regard to subsections "B" and "C" of either Listing, Plaintiff failed to cite evidence proving that she had at least two of the following: "marked" restriction in activities of daily living; "marked" difficulties in maintaining social functioning; "marked" difficulties in maintaining concentration, persistence, or pace; or "repeated" episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.00C, 12.04A, 12.06A. The ALJ completed the Psychiatric Review Technique form required when a claimant alleges mental impairments and noted evidence indicating Plaintiff had only "mild" restriction in activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 119-20). His conclusions are supported by the evidence, as Plaintiff's own function report indicates that she cooks, does light housework, shops as necessary, performs personal hygiene tasks adequately and independently, continues to drive as needed, helps take care of family pets, watches television, puts together jigsaw puzzles, and works crossword puzzles. (Tr. at 303-10.) Dr. Ripka echoed these activities in his examination notes when he noted that Plaintiff's activities of daily living and hygiene are normal. (Tr. at 627.) Dr.

Wilson's examination notes note the same daily activities that reveal only mild or moderate difficulties. (Tr. at 630.) Plaintiff has failed to show how the ALJ erred in concluding that Plaintiff's impairments did not meet or equal the criteria of Listing 12.04 or Listing 12.06.

### D.   Appeals Council Review

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

Plaintiff first asserts that the Appeals Council denied review without actually examining the medical records she submitted once the Appeals Council saw that

they were dated after the ALJ's decision. Plaintiff's argument is without merit. The Appeals Council specifically stated that it "looked at records from CED Mental Health Center, dated June 17, 2015, through October 22, 2015 (20 pages)." (Tr. at 2). However, the Appeals Council stated that "[t]his information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 19, 2014." (*Id.*)

Plaintiff attempts to rely upon *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317 (11th Cir. 2015), where the Eleventh Circuit held that it was legal error for the Appeals Council to refuse to consider a claimant's additional evidence. *Id.* at 1321. The Appeals Council in that case explained that it refused to consider additional evidence from two medical sources because "their opinions concerned a later time period and were immaterial to whether [the claimant] was disabled on or before the date of the ALJ's decision." *Id.* at 1320. The *Washington* court expressly noted that the case was "not a case in which the Appeals Council considered the additional evidence and then denied review." *Id.* at 1321 n.5. The court explained that "[w]hen the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rational for denying review.'" *Id.* (quoting *Mitchell v. Comm'r, Soc., Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)). Unlike the Appeals Council in *Washington*, the Appeals

Council here stated that it "looked at," or considered, the additional evidence, so here, *Mitchell*, 771 F.3d at 784, controls, not *Washington.*

Plaintiff also argues that once the additional evidence submitted to the Appeals Council is taken into consideration, substantial evidence does not support the ALJ's denial of benefits. This Court must thus decide whether the additional records submitted to the Appeals Council by Plaintiff were chronologically relevant to the time period considered by the ALJ and whether they constituted material evidence, in order to determine whether the Appeals Council erred in denying review. *See Ingram*, 496 F.3d at 1261.

The period under consideration by the ALJ was from December 21, 2012 through September 19, 2014. (Tr. at 8-27.) The additional treatment records Plaintiff submitted were dated after the ALJ's decision. They consisted of mental health records dated June 17, 2015, through October 22, 2015, and a mental health examination dated September 4, 2015, showing that Plaintiff complained of depression and anxiety and that she had recently attempted suicide by overdosing. (Tr. at 329-377, 637-706.) They are not chronologically relevant on their face. However, the Eleventh Circuit has recognized that an examination conducted after the ALJ's decision may still be chronologically relevant if it relates back to the period before the ALJ's decision. *Washington*, 806 F.3d at 1321. But in *Washington*,

the Eleventh Circuit held that the opinion of a psychologist who examined the claimant after the ALJ's decision was chronologically relevant when the psychologist stated in his opinion that his conclusions were based on, among other things, his review of the medical records from the period before the ALJ's decision. *See* 806 F.3d at 1322. In contrast here, Plaintiff has not pointed to anything in the additional records dated June through October 2015 showing that they were based on treatment provided to Plaintiff before the ALJ's decision. Plaintiff merely argues that the new submissions "describe psychological symptoms manifested by Claimant that, due to their nature and severity, could bear on her condition during the relevant period." (Doc. 10 at 57.) This is not enough to show that they concerned the time period under review.

The additional evidence Plaintiff submitted does not demonstrate that substantial evidence did not support the ALJ's decision and the Appeals Council properly denied review.

## IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Battles' arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 27, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704